# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

SIERRA CLUB; ELYRIA AND SWANSEA NEIGHBORHOOD ASSOCIATION; CHAFEE PARK NEIGHBORHOOD ASSOCIATION; and COLORADO LATINO FORUM,

        Petitioners

v.

ELAINE CHAO, in her official capacity as Secretary of Transportation; and JOHN M. CARTER, in his official capacity as Division Administrator, Federal Highway Administration, Colorado Division,

        Respondents

and

COLORADO DEPARTMENT OF TRANSPORTATION,

        Proposed Defendant-Intervenor

CIVIL ACTION NO. 1:17-CV-01679

## COLORADO DEPARTMENT OF TRANSPORTATION'S
## UNOPPOSED MOTION TO INTERVENE AS A RESPONDENT

The Colorado Department of Transportation ("CDOT") moves to intervene as a respondent in this action. Fed. R. Civ. P. 24(a)-(b). Sierra Club and the other named Petitioners (collectively, "Sierra Club") are seeking to set aside the Federal Highway Administration's ("FHWA") Record of Decision ("ROD") approving the Central 70 Project—a $1.1 billion highway project that aims to relieve congestion and improve safety along a deteriorating section of Interstate 70 ("I-70") in Denver, Colorado. CDOT is the state lead agency responsible for

performing ongoing maintenance of the deteriorating viaduct, designing and funding the necessary improvements to I-70, and conducting the environmental reviews and public outreach necessary to comply with federal laws, including the National Environmental Policy Act ("NEPA") and Clean Air Act ("CAA").  An order setting aside the ROD would undermine more than a decade of CDOT's planning and investment for the Project, impair CDOT's ability to fulfill its transportation mission on behalf of the people of the State of Colorado, and subject CDOT to substantially increased costs to bring the Project to fruition.  This Court therefore should grant CDOT's motion to intervene.

Counsel for CDOT has conferred with counsel for all other parties to this case.  No party will file an opposition to this motion.

## BACKGROUND

The Central 70 Project is a highway improvement project in Denver, Colorado, that seeks to reconstruct and modernize the existing facility owned and operated by CDOT.  Four factors contribute to the need for the Project.  First, the I-70 viaduct has exceeded its anticipated lifespan and is currently classified as "structurally deficient" or "functionally obsolete."  (Final EIS at 2-5.)[1]  Second, travel demand along I-70 already exceeds the existing design capacity of the highway, resulting in congestion, delays, and accidents.  (Final EIS 2-9.)  Third, the Denver area is experiencing rapid population growth and economic development that will continue to increase travel demand along I-70 into the foreseeable future.  (Final EIS 2-6 to 2-7.)  Fourth,

---

[1] The Final Environmental Impact Statement ("EIS") and ROD for the Project are publicly available on the official Project website maintained by CDOT, *http://www.i-70east.com/reports.html*.

I-70 currently experiences more accidents than the state average for urban freeways due to roadway conditions that do not meet current design standards, such as inadequate acceleration lane lengths and inadequate sight distances. (Final EIS 2-10.)

CDOT has been engaged in planning efforts to improve I-70 for more than a decade, beginning with preparation of the 2008 Draft EIS. CDOT performed extensive public outreach and offered the public multiple opportunities to comment on the 2008 Draft EIS, 2014 Supplemental Draft EIS, Final EIS, and CAA conformity analysis. (Final EIS 1-3 to 1-5, 10-1 to 10-36; ROD Attachments E & F.) Informed by the public process, CDOT developed a preferred alternative that includes reconstructing the existing viaduct and lowering a section of the highway below grade, widening the highway to add tolled express lanes in each direction, and constructing a four-acre cover over a portion of the lowered section that will serve as a public park for the local community. (Final EIS at 3-11 to 3-18.)

On February 10, 2017, FHWA issued the ROD approving the Project and selecting the preferred alternative. *See* 82 Fed. Reg. 10430, 10431. (*See also* ROD 12-13.) Sierra Club later filed this lawsuit, alleging that the ROD violates NEPA and the CAA. (ECF 1.) As relief for its claims, Sierra Club requests this Court to vacate the ROD and order FHWA to conduct additional analysis. (ECF 1 Prayer for Relief.)

## ARGUMENT

### I.   CDOT is entitled to intervene in this action as a matter of right.

The Tenth Circuit follows "a somewhat liberal line in allowing intervention." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010). A movant is entitled to intervene as of right if: (1) the motion is "timely"; (2) the movant claims an "interest relating to

3

the property or transaction that is the subject of the action"; (3) the movant's interest may "as a practical matter" be "impaired or impeded"; and (4) that interest is not "adequately represented" by existing parties. *Utahns for Better Transp. v. United States DOT*, 295 F.3d 1111, 1115 (10th Cir. 2002). Those factors are not "rigid, technical requirements," but rather are intended to "capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation." *WildEarth Guardians*, 604 F.3d at 1198 (quoting *San Juan Cty. v. United States*, 503 F.3d 1163, 1195 (10th Cir. 2007) (en banc)). For the reasons explained below, CDOT satisfies each of the factors for intervention as of right.

### A.  This motion is timely.

Courts determine the timeliness of a motion to intervene "in light of all the circumstances." *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1250-51 (10th Cir. 2001). The principal factors are "the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." *Id.* A motion is timely so long as it is filed at a "relatively early stage of the litigation." *Id.* (finding timely a motion filed two and a half years after the complaint).

This motion is timely because Sierra Club filed its complaint last month, on July 10, 2017, and the litigation still is at a very early stage. FHWA has not yet filed an answer, and CDOT fully participated in developing the joint case management plan for this action. Because this case has not yet progressed beyond a few initial filings, CDOT's intervention at this time does not prejudice the existing parties, who will not oppose this motion. CDOT's intervention motion therefore is timely.

4

### B. CDOT has an interest in the subject matter of this suit.

"The interest element is a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *WildEarth Guardians,* 604 F.3d at 1198 (citation and internal quotation marks omitted). In evaluating this factor, the Tenth Circuit emphasizes the "practical effect" of the suit on a prospective intervenor…." *San Juan Cty.*, 503 F.3d at 1192-93, 95. Furthermore, the "movant's claimed interest is measured in terms of its relationship to the property or transaction that is the subject of the action, not in terms of the particular issue before the district court." *WildEarth Guardians,* 604 F.3d at 1198.

As the state sponsor of the Central 70 Project, CDOT has a statutorily recognized interest in the subject matter of this lawsuit. CDOT's core mission is "to meet the transportation challenges to be faced by Colorado in the future." C.R.S. § 43-1-101(1). And by federal statute, state agencies like CDOT retain their "sovereign rights" to "determine which [highway] projects shall be federally financed." 23 U.S.C. § 145(a). Moreover, the state sponsor of a federal highway project may serve as a "joint lead agency" for purposes of conducting environmental reviews under NEPA. 23 U.S.C. § 139(a)(4), (c)(2)-(3), (c)(6), (n)(2); *see also* 23 C.F.R. 771.109(c)(1)-(3). CDOT is, in fact, the state lead agency for this Project, and CDOT spearheaded the "highway design efforts and development of the EIS" for the Project. (Final EIS 1-4.) State transportation agencies routinely intervene to defend projects they have sponsored from attacks under NEPA and other federal laws. *See, e.g.*, *Ctr. for Biological Diversity v. FHWA*, 2017 U.S. Dist. LEXIS 87648, *2 (C.D. Cal. May 11, 2017); *Ware v. FHWA*, 2016 U.S. Dist. LEXIS 42020, *2 (S.D. Tex. Mar. 30, 2016); *Sierra Club North Star Chapter v. LaHood*,

693 F. Supp. 2d 958, 966 (D. Minn. Mar. 11, 2010); *Pearson v. U.S. DOT*, 2009 U.S. Dist. LEXIS 14440, *1 (D. Or. Feb. 24, 2009); *Shenandoah Valley Network v. Capka*, 2009 U.S. Dist. LEXIS 80435, *2 (W.D. Va. Sept. 3, 2009); *Rivers Unlimited v. U.S. DOT*, 533 F. Supp. 2d 1, 2 (D.D.C. Jan. 8, 2008).

CDOT has expended substantial state funds to design the improvements to I-70, analyze the potential impacts of the Project, and produce the Draft EIS, Supplemental Draft EIS, Final EIS, and CAA conformity analysis.  (DeVito Declar. ¶ 5.)  Although the Project will receive some federal funds, CDOT and the State of Colorado will bear the vast majority—$1.03 billion—of the $1.1 billion total cost to build the Project.  (ROD 29.)  And as between CDOT and FHWA, it is CDOT that will bear the costs of any litigation-related delay in the project. (DeVito Declar. ¶ 6.)  Furthermore, CDOT—not FHWA—would bear the initial burden and costs of developing any supplemental documentation that Petitioners seek as relief in this case. (DeVito Declar. ¶ 5.)  CDOT also will oversee physical construction and operation of the Project.  (DeVito Declar. ¶ 4.)  CDOT therefore has the requisite interest in the subject matter of this suit to intervene as of right under Rule 24(a) and denying CDOT intervention would prejudice its ability to defend its unique interest in ensuring that the Project succeeds.  *See Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th Cir. 1997) (state's sovereign and regulatory interests sufficient); *WildEarth Guardians*, 573 F.3d at 995-96 (10th Cir. 2009) (economic interests sufficient); *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115-16 (10th Cir. 2002) (same).

### C. The relief sought by Sierra Club would impair or impede CDOT's interest.

The impairment test represents only a "minimal burden." *WildEarth Guardians*, 604 F.3d at 1199. A movant must show "only that impairment of its substantial legal interest is *possible* if intervention is denied." *Id.* (emphasis added). When evaluating the impairment element, "the court is not limited to consequences of a strictly legal nature." *Utah Ass'n of Counties*, 255 F.3d at 1253 (internal citation and quotation marks omitted).

Sierra Club has requested this Court to vacate the ROD for the Project and order FHWA to perform additional analysis. (ECF 1 Prayer for Relief.) Such relief would impair CDOT's interests in ensuring that the Project succeeds and thereby frustrate CDOT's ability to fulfill its statutory mission to meet the transportation needs of the people of the State of Colorado. *See* C.R.S. § 43-1-101(1). Setting aside the ROD also would jeopardize the extensive planning efforts and financial investments CDOT already has committed to the Project, and CDOT likely would have to invest more state resources to conduct further analysis and planning to get the Project back on track. Delaying the Project also would increase the total cost to CDOT and the public due to the potential need to incur contractual penalties, renegotiate contracts, and reconfigure construction schedules. (DeVito Declar. ¶ 6.) CDOT therefore meets the impairment element to intervene under Rule 24(a).

### D. Other parties to this suit do not adequately represent CDOT's interests.

A party seeking intervention "need make only a minimal showing to establish that its interests are not adequately represented by existing parties." *San Juan Cnty.*, 503 F.3d at 1203; *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). To meet that minimal burden, the moving party must show only the "*possibility* that representation *may* be

7

inadequate." *WildEarth Guardians*, 604 F.3d at 1200 (emphasis added).  Prospective intervenors often cannot rely on the federal government, which must represent federal interests generally, to adequately represent their specific interests.  *See Utahns for Better Transp.*, 295 F.3d at 1117.

As explained above, CDOT's interest in the Project is to meet the present and future transportation needs of the people of the State of Colorado.  FHWA, on the other hand, represents federal interests and therefore is not specifically focused on Colorado's transportation needs.  Nor does FHWA have a direct financial stake in the Project like CDOT.  And because CDOT led the efforts to design the highway improvements and conduct the environmental review, CDOT is uniquely familiar with the Project and the administrative record.  For these reasons, CDOT cannot simply rely on FHWA to defend the Project to its fullest extent and is entitled to intervene as of right.  *See Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (per curiam) (federal defendants inadequately represented state interests); *Atl. Sea Island Group LLC v. Connaughton*, 592 F. Supp. 2d 1, 7 (D.D.C. 2008) (same).

## II.    In the alternative, this Court should permit CDOT to intervene in this action.

CDOT also satisfies the requirements for permissive intervention under Rule 24(b).  Permissive intervention is appropriate where the movant demonstrates:  (1) it has a claim or defense that shares a common question of law or fact with the main action; (2) the intervention will not cause undue delay or prejudice; and (3) the motion to intervene is timely.  Fed. R. Civ. P. 24(b); *see also Lower Ark. Valley Water Conservancy Dist. v. United* States, 252 F.R.D. 687, 689 (D. Colo. 2008).  Courts may also consider whether the intervenor will "significantly contribute to the underlying factual and legal issues."  *Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 801 F. Supp. 553, 572 (D. Utah 1992); *see also Lower Ark.*, 252 F.R.D. at 691.

Here, CDOT intends to defend the Project against the same legal and factual claims asserted in Sierra Club's complaint. As explained above, this intervention motion is timely and will not delay or prejudice the existing parties. And given CDOT's perspective as the state lead agency for the Project, as well as CDOT's substantial involvement in preparing the environmental documentation supporting the Project, CDOT will significantly contribute to the underlying factual and legal issues. This Court therefore should permit CDOT to intervene as a respondent in this case.

## CONCLUSION

For the foregoing reasons, this Court should grant CDOT's unopposed motion to intervene as of right or, in the alternative, should permit CDOT to intervene as a respondent in this case.

        Respectfully submitted,

        JOHN E. PUTNAM
        NICHOLAS A. DIMASCIO
        KAPLAN KIRSCH & ROCKWELL LLP
        1675 Broadway, Suite 2300
        Denver, CO  80202
        (303) 825-7000
        jputnam@kaplankirsch.com
        ndimascio@kaplankirsch.com

        BRENT E. BUTZIN
        Assistant Attorney General
        1300 Broadway, 10th Floor
        Denver, CO  80203
        (720) 508-6638
        Brent.Butzin@coag.gov

        *Attorneys for Intervenor Respondent*

SEPT. 8, 2017                *s/ Nicholas A. DiMascio*
                                    NICHOLAS A. DIMASCIO

## CERTIFICATE OF SERVICE

I hereby certify that on this eighth day of September, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Robert E. Yuhnke<br>4050 SE Hosner Terrace<br>Gresham, OR 97080<br>(303) 499-0425<br>bob.yuhnke@prodigy.net | Carter F. Thurman<br>Mayte Santacruz<br>U.S. Department of Justice<br>Env't & Natural Resources Division<br>Natural Resources Section<br>P.O. Box 7611 |
| Andrea S. Gelfuso<br>2402 S. Holland Street<br>Lakewood CO 80227<br>(303) 955-1910<br>agelfuso6@gmail.com | Washington, DC 20044-7611<br>(202) 305-0465 (phone)<br>(202) 305-0506 (fax)<br>carter.thurman@usdoj.gov<br>mayte.santacruz@usdoj.gov |
| Gregory N. Corbin<br>Milligan Rona Duran & King LLC<br>1627 Vine Street<br>Denver, CO 80206<br>Tel. 720-414-2000<br>gnc@mrdklaw.com | |

 

                                        *s/ Nicholas A. DiMascio*
                                        NICHOLAS A. DIMASCIO