**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

_____

SIERRA CLUB; ELYRIA AND SWANSEA
NEIGHBORHOOD ASSOCIATION;
CHAFEE PARK NEIGHBORHOOD
ASSOCIATION; and COLORADO LATINO
FORUM,

        Petitioners

v.

ELAINE CHAO, in her official capacity as
Secretary of Transportation; and JOHN M.
CARTER, in his official capacity as Division
Administrator, Federal Highway
Administration, Colorado Division,

        Respondents

and

COLORADO DEPARTMENT OF
TRANSPORTATION,

        Proposed Intervenor Respondent

CIVIL ACTION NO.  1:17-CV-01679

_____

**COLORADO DEPARTMENT OF TRANSPORTATION'S [PROPOSED] ANSWER TO
SIERRA CLUB'S PETITION**

_____

Proposed Intervenor Respondent the Colorado Department of Transportation ("CDOT")

answers the Petition as follows:

**INTRODUCTION**

1.      Contains a characterization of Petitioners' case, to which no response is required, and description of the Central 70 Project Record of Decision ("ROD"), which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

2.      Contains a characterization of Petitioners' case, to which no response is required. CDOT lacks knowledge or information sufficient to form a belief about the truth of allegations concerning the location of Petitioners' residences and schools.

3.      Purports to characterize an unidentified EPA finding, of which CDOT lacks knowledge or information sufficient to form a belief about the truth of Petitioners' assertion. Admitted that particulate matter and nitrogen oxide are regulated under the NAAQS.

4.      Denied that the ROD is unlawful and that the environmental reviews conducted by CDOT and FHWA did not comply with all listed statutes.

5.      a.      Denied.  The Final EIS and ROD adequately investigated and disclosed the potential impacts of the Project on air quality and community health.  This paragraph also purports to characterize the Final EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

        b.      Denied.  The Final EIS and ROD sufficiently considered the 2014 HIA report.  This paragraph purports to characterize the 2014 HIA report, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

c.      Denied.  The Final EIS and ROD sufficiently analyzed a reasonable range of alternatives and/or mitigation.

d.      Denied.  The Final EIS and ROD sufficiently analyzed whether emissions from the Project will violate the NAAQS for PM2.5 and used appropriate methods for determining impacts to air quality.

e.      Denied.  The Final EIS and ROD sufficiently analyzed whether emissions from the Project will violate the NAAQS.   The prevention of significant deterioration regulations do not apply to the Project and there was no duty to address them.

f.      Denied.  The Final EIS and ROD sufficiently identified and considered appropriate alternatives and/or mitigation measures.

g.      Denied.  The Final EIS and ROD fully complied with the FAHA by ensuring that the Project is in the best overall public interest, taking into account the need for fast, safe, and efficient transportation and public services, and the costs of eliminating or minimizing adverse economic, social, and environmental effects.

h.      Denied.  The Final EIS and ROD adequately considered truck traffic along I-70 and did not rely on credit for emissions reductions from unenforceable control measures.

6.      Denied.  The Final EIS and ROD adequately considered the Project's impacts to air quality and reasonably concluded that the Project will not cause or contribute to NAAQS violations.

**PART I:  PARTIES, AGENCY ACTIONS SUBJECT TO REVIEW, JURISDICTION
AND VENUE, AND STANDING**
**A.    PARTIES**

**Petitioners:**

7.    CDOT lacks knowledge or information sufficient to form a belief about the truth
of Petitioners' residences or work, recreation, or school locations.  Denied that the Project will
exacerbate air pollution.

a.    The **Sierra Club** – CDOT lacks knowledge or information sufficient to
form a belief about the truth of Sierra Club's membership and mission.

b.    The **Elyria and Swansea Neighborhood Association** – CDOT lacks
knowledge or information sufficient to form a belief about the truth of Elyria and Swansea
Neighborhood Association's boundaries.  Admitted that Elyria and Swansea are primarily low-
income Hispanic neighborhoods.  CDOT otherwise denies this paragraph's inaccurate
characterization of the effects of the Project on the Elyria and Swansea neighborhoods.

c.    The **Chafee Park Neighborhood Organization** – CDOT lacks
knowledge or information sufficient to form a belief about the truth of the Chafee Park
Neighborhood Organization's boundaries.  Denied that the project will exacerbate air pollution.

d.    The **Colorado Latino Forum** – CDOT lacks knowledge or information
sufficient to form a belief about the truth of the Colorado Latino Forum's structure or mission.
Denied that the Project will exacerbate air pollution.

**Respondents:**

8.    a.    **Secretary Chao** – Admitted.

b.    **Division Administrator Cater** – Admitted.

4

**B.     AGENCY ACTIONS SUBJECT TO REVIEW**

9.      Contains a characterization of Petitioners' case, to which no response is required.

10.     a.      Denied.  The Final EIS and ROD complied with all relevant statutory and regulatory requirements.

        b.      Denied.  The Final EIS and ROD complied with all relevant statutory and regulatory requirements.

**C.     JURISDICTION AND VENUE**

11.     Admitted that the Court generally has subject matter to review final agency actions, but denied that the Court has subject matter over some or all of the claims asserted in this case.

12.     Admitted that the Court generally has power to issue the stated relief, but denied that such relief is warranted or appropriate in this case.

13.     Admitted that, if this Court has subject matter jurisdiction over some or all of the claims asserted, venue is proper in the District of Colorado.

14.     Denied.  Petitioners failed to raise some or all of their claims during the comment period.

15.     Admitted that the ROD for the Project was published on February 10, 2017, and this Petition was filed within the statute of limitations stated in 29 U.S.C. § 139(1).  Denied that there has been a final agency for some or all of Petitioners' claims.

**D.     STANDING**

16.     Denied.  Petitioners lack standing to assert some or all of their claims on behalf of their members.

17.     Denied.  Petitioners have not met the injury-in-fact requirement for standing.

18.     a.     Denied.  The Project at issue will not cause or increase dangerous levels of air pollution.  Further, the Final EIS and ROD sufficiently analyzed a reasonable range of alternatives and mitigation.

b.     Denied.  See Answer 17.  Also, the Final EIS and ROD adequately considered the Project's impacts on air quality, sufficiently considered potential mitigation, and reasonably concluded that the Project will not cause or contribute to dangerous levels of air pollution.

c.     Denied.  The Project will not cause the claimed injuries.  Further, vacating FHWA's ROD will not redress any alleged injury from air pollution.

19.     CDOT lacks knowledge or information sufficient to form a belief about the truth of Petitioners' residences and school locations.  Otherwise denied.

20.     a.     Denied.  The Final EIS and ROD complied with all applicable CAA regulatory requirements.

b.     Denied.  The Final EIS and ROD adequately compared a reasonable range of alternatives and mitigation measures and concluded that the Project will not cause or contribute to a NAAQS violation for PM10.  The prevention of significant deterioration regulations do not apply to the Project and there was no duty to address them.

c.     Denied.  The Final EIS and ROD complied with all statutory and regulatory requirements to analyze PM2.5 and considered a reasonable range of alternatives and mitigation.

21.    a.    Denied.  The Final EIS and ROD adequately considered a reasonable range of alternatives.  Further, the proposed rerouting alternative was appropriately found not to be a reasonable alternative.

b.    Denied.  The Final EIS and ROD considered a reasonable range of alternatives and mitigation.  Further, the Project would not violate any of the referenced provisions.

c.    Denied.  FHWA and CDOT provided reasonable public access to and opportunity to comment on the Draft Conformity Analysis and the technical data underlying that analysis, complied with all pertinent EPA guidance, and reasonably responded to comments on the analysis.

22.    Admitted that, as with any other highway, vehicles using the Project will emit air pollutants disclosed in the EIS.  Otherwise denied.  The Final EIS and ROD adequately disclosed and considered the Project's impacts on air pollution and reasonably concluded that the Project will not cause or contribute to any air quality violations.

23.    Admitted.

24.    a.-b.    Contains a characterization of the Final EIS and Conformity Determination, which speak for themselves and are the best evidence of their own contents. Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

25.    a.-f.    Contains a characterization of the Final EIS, ROD, and Conformity Determination, which speak for themselves and are the best evidence of their own contents. Denied to the extent there is any discrepancy between Petitioners' characterization and the

source material.  Otherwise denied.  The Conformity Determination in the ROD complies with all applicable statutes, regulations, and guidance and reasonably concludes that the Project will not cause or contribute to a NAAQS violation for PM10.  Other calculations conducted by Petitioners were not required by EPA guidance.

26.     Purports to quote an EPA document, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.  Denied that the alternative concentration calculations proffered by the Petitioners are appropriate to compare to the NAAQS or Air Quality Indices.

27.      Purports to quote an EPA document, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

28.     Characterizes the Final EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

29.     Purports to quote an EPA document, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

30.     Purports to quote an EPA document, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

31.     Purports to quote an EPA document, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

32.     Characterizes Sierra Club comments, which speak for themselves and are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.  Otherwise denied.  The Final EIS and ROD complied with all statutory and regulatory requirements regarding PM2.5 and reached reasonable conclusions regarding PM2.5 standards, for which Denver has always been classified as an attainment area.

33.     Characterizes the Final EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.  Denied that the Project will increase risks of heart attacks.

34.     CDOT lacks knowledge or information sufficient to form a belief about the truth of Petitioners' residences, school locations, ages, and health conditions.  This paragraph also characterizes an unidentified EPA finding, of which CDOT lacks sufficient knowledge to respond and which, if identified, would speak for itself.

35.     a.-j.     CDOT lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Petitioners' standing declarations.

36.     Denied.  The Final EIS and ROD (including the attached CAA Conformity Determination and FAHA findings) adequately considered the Project's impacts on air quality

and reasonably concluded that the Project will not cause or contribute to any violations of health-based air quality standards.

37.      Denied.  Vacating the ROD will not redress any of Petitioners' alleged injuries.

## PART II:  NEPA CLAIMS

## INTRODUCTION

38.      Quotes from a statute that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

39.      Quotes from a regulation that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

40.      Quotes from a regulation that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

41.      Quotes from a regulation that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

42.      Quotes from a regulation that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

43.      a.-d.  Quotes from a regulation that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners'

characterization and the source material.  Denied that the Final EIS and ROD violate the NEPA regulations.

44.      Denied.  The Final EIS and ROD sufficiently and thoroughly analyzed the Project's impacts on air quality consistent with statutory and regulatory requirements, and applicable EPA, FHWA, and other guidance.

**First NEPA Claim:**
**FAILURE TO PROVIDE A FULL AND FAIR DISCUSSION OF COMMUNITY HEALTH IMPACTS**

45-65.  CDOT denies Paragraphs 45 to 65 in their entirety.  Paragraphs 45 to 65 purport to characterize the 2014 HIA report, EPA documents, and the Final EIS, which speak for themselves and are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.  The Final EIS and ROD adequately considered the 2014 HIA report, baseline I-70 emissions, and the connection between air quality and community health.

**Second NEPA Claim:**
**FAILURE TO INVESTIGATE AND DISCLOSE HEALTH IMPACTS OF FUTURE PROJECT EMISSIONS**

66-69.  CDOT denies Paragraphs 66 to 69 in their entirety.  The Final EIS and ROD adequately and thoroughly analyzed the Project's impacts on air quality or community health. There is no evidence that the Project will cause the alleged health effects and no requirement to perform the specific studies that Petitioners seek.  Paragraphs 66 to 69 purport to characterize the Final EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

**Third NEPA Claim:**
**FAILURE TO IDENTIFY ALTERNATIVES TO RESTORE AND ENHANCE THE HUMAN ENVIRONMENT BY REDUCING POLLUTANT EXPOSURES**

70-73. CDOT denies Paragraphs 70 to 73 in their entirety. The Final EIS and ROD considered a reasonable range of alternatives. Further, Petitioners' assertions regarding air pollution and health impacts are inconsistent with the reasonable conclusions reached in the Final EIS and ROD. Paragraphs 70 to 73 purport to characterize EPA findings and statutory and regulatory provisions, which speak for themselves and are the best evidence of their own contents. Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

**Fourth NEPA Claim:**
**FAILURE TO COMPARE REASONABLE ALTERNATIVES WITH RESPECT TO IMPACTS ON COMMUNITY HEALTH**

74-77. CDOT denies Paragraphs 74 to 77 in their entirety. The Final EIS and ROD reasonably eliminated the I-76/I-270 alternative from detailed consideration and sufficiently analyzed the impacts of a reasonable range of alternatives. Paragraphs 74 to 77 purport to characterize the Final EIS, as well as studies, data, and other public comments, all of which speak for themselves and are the best evidence of their own contents. Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

**Fifth NEPA Claim:**
**FAILURE TO CONSIDER CUMULATIVE IMPACTS ON HUMAN HEALTH OF EXPOSURE TO THE FULL ARRAY OF POLLUTANTS EMITTED FROM HIGHWAYS**

78-91. CDOT denies Paragraphs 78 to 91 in their entirety. The Final EIS and ROD sufficiently considered the scientific evidence concerning the impacts of highway emissions on

community health.  EPA has not developed standards for the cumulative effects of air pollutants identified by Petitioners.  Paragraphs 78 to 91 purport to characterize unidentified studies and EPA findings and EPA findings, which speak for themselves and are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.  Paragraphs 81-82 do not identify particular peer reviewed studies.

### Sixth NEPA Claim:
### LIMITED PURPOSE AND NEED BYPASSES ALTERNATIVES THAT RESTORE AND ENHANCE THE HUMAN ENVIRONMENT

92.     CDOT denies Paragraph 92 in its entirety.  FHWA reasonably defined the purpose and need for the Project under NEPA.

### Seventh NEPA Claim:
### REFUSAL TO CONDUCT FULL IMPACT ANALYSIS OF I-76/I-270 ALTERNATIVE BYPASS ALTERNATIVES THAT RESTORE AND ENHANCE THE HUMAN ENVIRONMENT AND PARTIALLY MEET PURPOSE AND NEED

93-95.  CDOT denies Paragraphs 93-95 in their entirety.  The Final EIS and ROD reasonably concluded that the I-76/I-270 alternative would not meet the purpose and need for the project and reasonably eliminated that alternative from detailed analysis.

### Eighth NEPA Claim:
### FAILURE TO USE CORRECT AIR QUALITY MODELING TOOLS FOR PM2.5 EMISSIONS

96-129.   CDOT denies Paragraphs 96 to 129 in their entirety.  The Final EIS and ROD complied with all statutory and regulatory requirements to analyze PM2.5, and relied upon substantial evidence and reasonable methods to evaluate PM emissions and the potential for violation of the NAAQS.  Paragraphs 96 to 129 purport to characterize the Final EIS, EPA guidance, and various regulatory provisions, which speak for themselves and are the best

evidence of their own contents.  Denied to the extent there is any discrepancy between

Petitioners' characterization and the source material.

### Ninth NEPA Claim:
### FAILURE TO ACKNOWLEDGE THAT PREDICTED PM10 EMISSIONS WILL EXCEED THE CAA INCREMENT TO PREVENT THE SIGNIFICANT DETERIORATION OF AIR QUALITY

130-140.   CDOT denies Paragraphs 130 to 140 in their entirety.  The Final EIS and ROD

sufficiently analyzed the Project's impacts to air quality, including PM10 emissions.  The

prevention of significant deterioration regulations do not apply to highways and vehicles that use

them.  Paragraphs 130 to 140 purport to characterize the Final EIS, EPA guidance, and various

regulatory provisions, which speak for themselves and are the best evidence of their own

contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and

the source material.

### Tenth NEPA Claim:
### FAILURE TO CONSIDER MITIGATION MEASURES TO PROTECT RESIDENTS FROM ADVERSE HEALTH EFFECTS OF PROEJCT AIR POLLUTANTS

141-146.   CDOT denies Paragraphs 141 to 146 in their entirety.  The Final EIS and ROD

sufficiently considered air quality mitigation measures for the Project and appropriately rejected

measures that were not reasonable.  Paragraphs 141 to 146 purport to characterize comments on

the Final EIS and comment responses, which speak for themselves and are the best evidence of

their own contents.  Denied to the extent there is any discrepancy between Petitioners'

characterization and the source material.

### PART III:  FEDERAL-AIR HIGHWAY ACT CLAIMS

147-152.   CDOT denies Paragraphs 147 to 152 in their entirety.  The Final EIS and ROD

fully complied with the FAHA by ensuring that the Project is in the best overall public interest,

taking into account the need for fast, safe, and efficient transportation and public services, and the costs of eliminating or minimizing adverse economic, social, and environmental effects. Paragraphs 147 to 152 purport to quote various statutory and regulatory provisions, which speak for themselves and are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.  CDOT incorporates its answers to Paragraphs 1-146 that Petitioners rely upon for their claims that Respondents did not comply with the FAHA.

**PART IV:  CLEAN AIR ACT CLAIMS**

**INTRODUCTION**

153.    Describes a statute that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

154.    Contains a characterization of Petitioners' claims, to which no response is required.

155.    Purports to quote a statute that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

156.    Purports to quote a statute that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

157.    Purports to quote a statute that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

158.    Denied.  The ROD included a Conformity Determination that complies with all statutory and regulatory requirements.

159.    It is not clear what Petitioners refer to by "authorization for award" under 23 U.S.C. § 106 and CDOT therefore denies the allegations in this paragraph.

160.    CDOT admits that CDOT and FHWA have not yet entered into a Project Agreement and otherwise denies the allegations in this paragraph.

## EPA'S CONFORMITY RULES

161.    Describes a regulation that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

162.    Purports to quote a regulation that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

163.    Describes a regulation that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

164.    Purports to quote a regulation that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

165.    Purports to quote a regulation that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

166.    Admitted.

167.    Purports to quote EPA guidance that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

168.    Purports to quote a regulation that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.  Denied that the Conformity Determination attached to the ROD fails to comply with all applicable statutes and regulations.

**DETERMINING DESIGN VALUES**

169.    Purports to quote EPA guidance that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

170.    Purports to quote a regulation that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.  Otherwise admitted.

171.    Purports to quote EPA guidance that speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

**FACTS RELATED TO CONFORMITY DETERMINATION**

172.    Characterizes the ROD, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

173.    Admitted that, for the reasons stated in the Air Quality Conformity Technical Report attached to the ROD, a PM10 hotspot analysis was required and performed for the Project.

174.    Admitted that the 2008 Draft EIS did not include a hot-spot analysis.

**PROJECT EMISSIONS ANALYSIS FOR SUPPLEMENTAL DRAFT EIS**

175.    Characterizes the Supplemental Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

176.    Admitted.

177.    Characterizes the Supplemental Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

178.    Characterizes the Supplemental Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

179.    Characterizes the Supplemental Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

180.     Characterizes the Supplemental Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

181.     Characterizes the Supplemental Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

182.     Purports to quote the EPA guidance, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

183.     Characterizes the Supplemental Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

184.     Characterizes the Supplemental Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

185.     Characterizes the Supplemental Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

186.     Characterizes the Supplemental Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

187.    Purports to quote the Supplemental Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

188.    Characterizes the Supplemental Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

189.    Characterizes the Supplemental Draft EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

190.    Admitted that the Sierra Club submitted comments.  Otherwise, this paragraph characterizes the Sierra Club comments, which speak for themselves and are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

## PROJECT EMISSIONS ANALYSIS FOR FINAL EIS

191.    Admitted.

192.    Characterizes the Final EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

193.    Characterizes the Final EIS and ROD, which speaks for themselves and are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

194.     Characterizes the Final EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

195.     Characterizes the Final EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

196.     Characterizes the Final EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

197.     Characterizes the Final EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

198.     Characterizes the Final EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

199.     Characterizes the Final EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

200.     Characterizes the Final EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

201.    Characterizes the Final EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

202.    Characterizes the Final EIS, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

**PROJECT EMISSIONS ANALYSIS FOR CONFORMITY DETERMINATION**

203.    Admitted.

204.    Characterizes comments on the Draft Conformity Determination, which speak for themselves and are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

205.    Admitted.

206.    Characterizes the Conformity Determination, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

207.    Characterizes the Conformity Determination, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

208.    Admitted that EPA submitted comments regarding the background PM10 concentrations.  Otherwise denied.

209.    Characterizes EPA guidance and the ROD, which speak for themselves and are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

210.    Characterizes the Conformity Determination, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

211.    Characterizes the Conformity Determination, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

212.    Characterizes the Conformity Determination, which speaks for itself and is the best evidence of its own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

213.    Characterizes Sierra Club comments, which speak for themselves and are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

**First CAA Claim:**
**BACKGROUND AIR QUALITY USED TO CALCULATE**
**"DESIGN VALUE" NOT LAWFULLY DETERMINED**

214-231.   CDOT denies Paragraphs 214 to 231 in their entirety.  The Conformity Determination in the ROD complied with all applicable statutes, regulations, and guidance for determining background and projected total concentrations of PM10.  Paragraphs 214 to 231 characterize the Final EIS, Conformity Determination, and various statutory, regulatory, and guidance provisions that speak for themselves and are the best evidence of their own contents.

Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

## Second CAA Claim:
## FAILURE TO USE HIGHEST MONITORED BACKGROUND VALUE AS REQUIRED BY 2010 PM HOT-SPOT GUIDANCE

232-241.   CDOT denies Paragraphs 232 to 241 in their entirety.  The Conformity Determination in the ROD complied with the appropriate EPA guidance for determining background concentrations of PM10.  FHWA and CDOT reasonably relied on EPA guidance and direct comment regarding the appropriate means to identify applicable background levels for the hot-spot analysis.  Paragraphs 232 to 241 characterize the Conformity Determination, an EPA e-mail, and various statutory and guidance provisions that speak for themselves and are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

## Third CAA Claim:
## FHWA'S PROJECT DESIGN VALUE UNLAWFULLY OMITS UP TO EIGHT DAYS OF PM10 CONCENTRATIONS THAT MAY VIOLATE THE NAAQS FOR PM10

242-253.   CDOT denies Paragraphs 242 to 253 in their entirety.  CDOT and FHWA provided reasonable public access to the Draft Conformity Analysis and the technical data underlying that analysis, and the conformity Determination in the ROD complied with all applicable statutes, regulations, and EPA guidance for calculating the PM10 design value.  FHWA and CDOT reasonably relied on EPA guidance and direct comment regarding the appropriate means to identify applicable background levels for the hot-spot analysis.  Paragraphs 242 to 253 characterize the comments on the Final EIS, the Conformity Determination, and various statutory, regulatory, and guidance provisions that speak for themselves and are the best

evidence of their own contents.  Denied to the extent there is any discrepancy between

Petitioners' characterization and the source material.

**Fourth CAA Claim:**
**CONFORMITY DETERMINATION UNLAWFULLY RELIES ON UNDISCLOSED MITIGATION MEASURES THAT ARE UNENFORCEABLE**

254-271.   CDOT denies Paragraphs 254 to 271 in their entirety.  CDOT and FHWA

provided reasonable public access to the Draft Conformity Analysis and the technical data

underlying that analysis, and the Conformity Determination in the ROD does not rely on

unenforceable control measures.  Portions of Paragraphs 254 to 271 characterize the ROD,

comments on the Draft Conformity Determination, responses to those comments, and various

statutory, regulatory, and guidance provisions that speak for themselves and are the best

evidence of their own contents.  Denied to the extent there is any discrepancy between

Petitioners' characterization and the source material.

**Fifth CAA Claim:**
**CONFORMITY DETERMINATION IS ARBITRARY AND CAPRICIOUS BY FAILING TO ACCOUNT FOR HALF OF TRUCK EMISSIONS AND FAILING TO DEMONSTRATE THAT PROJECT EMISSIONS WILL NOT VIOLATE THE PM10 NAAQS**

272-302.   CDOT denies Paragraphs 272 to 302 in their entirety.  The Conformity

Determination in the ROD reasonably analyzes truck traffic along I-70 and complies with all

applicable regulations and EPA guidance.  Paragraphs 272 to 302 characterize the Final EIS,

Draft Conformity Determination, comments on those documents and responses to those

comments, and various statutory, regulatory, and guidance provisions that speak for

themselves and are the best evidence of their own contents.  Denied to the extent there is any

discrepancy between Petitioners' characterization and the source material.

**Sixth Cause of Action:**
**HOT-SPOT ANALYSIS FAILS TO DEMONSTRATE PM10 AND CO**
**CONCENTRATIONS WILL NOT VIOLATE NAAQS WHERE TRAFFIC TUNNEL**
**EMISSIONS WILL EXPOSE CHILDREN ON PLAYGROUND**

303-359.   CDOT denies Paragraphs 303 to 359 in their entirety.  The air quality analysis in the Final EIS and the Conformity Determination in the ROD adequately considered scientific reports and modeling of emissions from vehicles under the cover. Paragraphs 303 to 359 characterize the Final EIS, the Conformity Determination in the ROD, public comments, and scientific reports, all of which speak for themselves and are the best evidence of their own contents.  Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.  Paragraphs 303 to 359 also appear to rely on some studies and materials that were not presented to the Respondents during public comment periods and are not part of the administrative record.

**Seventh CAA Claim:**
**OPPORTUNITY FOR COMMENT HAS NOT BEEN PROVIDED**
**AS REQUIRED BY LAW**

360-372.   CDOT denies Paragraphs 360 to 372 in their entirety.  CDOT and FHWA provided reasonable public access to the Draft Conformity Analysis and the technical data underlying that analysis, and reasonably responded to public comments on that analysis. Paragraphs 360 to 372 characterize the ROD, public comments, and responses to those comments, all of which speak for themselves and are the best evidence of their own contents. Denied to the extent there is any discrepancy between Petitioners' characterization and the source material.

## PRAYER FOR RELIEF

CDOT denies that Petitioners are entitled to any of the relief requested.

## GENERAL DENIALS

1.      CDOT further denies each and every allegation not specifically admitted above.

2.      FHWA has not yet produced the administrative record for its decision.  The Petition relies on or incorporates documents that are not in the administrative record for FHWA's decision and therefore should not be considered by the Court.  Notwithstanding any of the above responses to the individual paragraphs of the Petition, CDOT denies all of Petitioners' allegations that depend for their support on documents outside of the administrative record for FHWA's decision.

## AFFIRMATIVE DEFENSES

1.       The Court lacks subject matter jurisdiction over some or all of the claims in the Petition because Petitioners lack standing, having failed to demonstrate an injury-in-fact caused by the agency action at issue or redressible by an order setting aside that agency action.

2.      Petitioners failed to exhaust their administrative remedies and/or waived the right to assert some or all of the claims and arguments in the Petition.

Respectfully submitted,

JOHN E. PUTNAM
NICHOLAS A. DIMASCIO
KAPLAN KIRSCH & ROCKWELL LLP
1675 Broadway, Suite 2300
Denver, CO  80202
(303) 825-7000
jputnam@kaplankirsch.com
ndimascio@kaplankirsch.com

BRENT E. BUTZIN
Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO  80203
(720) 508-6638
Brent.Butzin@coag.gov

*Attorneys for Intervenor Respondent*

SEPT. 8, 2017                 *s/ Nicholas A. DiMascio*
                             NICHOLAS A. DIMASCIO

## CERTIFICATE OF SERVICE

I hereby certify that on this eighth day of September, 2017, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the following email addresses:

Robert E. Yuhnke
4050 SE Hosner Terrace
Gresham, OR 97080
(303) 499-0425
bob.yuhnke@prodigy.net

Andrea S. Gelfuso
2402 S. Holland Street
Lakewood CO 80227
(303) 955-1910
agelfuso6@gmail.com

Gregory N. Corbin
Milligan Rona Duran & King LLC
1627 Vine Street
Denver, CO 80206
Tel. 720-414-2000
gnc@mrdklaw.com

Carter F. Thurman
Mayte Santacruz
U.S. Department of Justice
Env't & Natural Resources
Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
(202) 305-0465 (phone)
(202) 305-0506 (fax)
carter.thurman@usdoj.gov
mayte.santacruz@usdoj.gov

*s/ Nicholas A. DiMascio*
NICHOLAS A. DIMASCIO